(C. D. 788)

KNICKERBOCKER MILLS CO. ET AL. v. UNITED STATES

United States Customs Court, Third Division

(Decided June 30, 1943)

*Barnes, Richardson & Colburn; Strauss & Hedges* (*J. Bradley Colburn* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiffs protest against the assessment of duty on certain dried huckleberries at the rate of 2½ cents per pound under the provision for "Berries, edible, * * * dried" in paragraph 736 of the Tariff Act of 1930. In the protests filed with the collector the merchandise is claimed to be free of duty under either paragraph 1669 or paragraph 1722, but these claims do not appear to be relied upon by the plaintiffs. Amendments to the protests were granted by the court in which it is claimed that the commodity is free of duty under paragraph 1670 and this latter claim is the one relied upon. That provision reads as follows:

PAR. 1670. Dyeing or tanning materials: Fustic wood, hemlock bark, logwood, mangrove bark, oak bark, quebracho wood, wattle bark, divi-divi, myrobalans fruit, sumac, valonia, nutgalls or gall nuts, and all articles of vegetable origin used for dyeing, coloring, staining, or tanning, all the foregoing, whether crude or advanced in value or condition by shredding, grinding, chipping, crush-

ing, or any similar process; all the foregoing not containing alcohol and not specially provided for.

The three cases herein involved were consolidated for trial and the plaintiffs introduced the record in the case of *Knickerbocker Mills Co.* v. *United States*, 6 Cust. Ct. 262; C. D. 478, which covered the same kind of merchandise imported by one of the plaintiffs in this case.

The first witness called by the plaintiff in the incorporated record was a chemist employed by the importing firm. He testified that during his 4½ years of experience with that firm he had analyzed every shipment of dried huckleberries received, and found that no alcohol was contained therein; that he sold all of the berries to two firms in New York City and visited those firms every week or two during the past 2½ years and found that they used the berries to extract coloring matter therefrom; that he had not sold such berries to food manufacturers, and, inasmuch as they contained from 5 to 6 per centum of acid insoluble ash, he was of opinion that they were not fit for human consumption. He testified further that, prior to his employment by the importing firm, he had been engaged in the sale of such berries on his own account and made sales to the Mohawk Liquor Co., Hiram Walker & Sons, and Schenley Distillers, Inc.; that he showed those firms how to use the berries for coloring cordials and saw them use the articles for that purpose; that his entire experience with them in the United States extended over a period of 9½ years, but he had been familiar with them for 20 years, as his father had his own plantation in Hungary where he planted and studied the bushes.

The plaintiffs' second witness was a chemist who for 2 years was in charge of the production of fruit extracts for the firm of Fries & Bros., one of the customers of Knickerbocker Mills Co. He testified that his firm made fruit extracts for coloring purposes from the berries; that, prior to his employment with Fries & Bros., he worked for 1 year as a chemist in charge of production of cordials with Schenley Distilleries, Inc.; that dried huckleberries were used by that firm for coloring cordials; that previously he was employed for 5 months by H. Barrett of Brooklyn, N. Y., a producer of fine extracts, and dried huckleberries were used for coloring by that firm; that during his experience with those three firms he had used them only as coloring. On cross-examination he testified that he had been in the United States only 3 years.

The defendant called a witness who was connected with the Greenwich Processing Co. of Brooklyn, N. Y. He testified that for 10 years, from 1928 to 1937, his firm had used dried huckleberries from Russia and Poland for making pie filling which he sold to bakers' supply houses and wholesale manufacturing bakers and that he had

seen the purchasers use the filling for making huckleberry pies and had eaten pie made from such filling; that such use was the only use of the berries with which he was acquainted; that the berries were not used in pie fillings for coloring purposes.

In the *Knickerbocker Mills Co.* case, *supra*, the court held on that record that the plaintiff had not proved the chief use of the merchandise to be for coloring purposes. The court said:

> The philosophy of the rule relied upon, as we gather it, is that the exception or the out of the ordinary use of a product will not give *that* use, i. e. the exceptional use, classification to the product. It will still be controlled by the common or the ordinary use made of such product. If we apply that theory to the testimony in' this case, backed by the common knowledge of experience as to the general use of berries of this type, before drying, plus the common knowledge of which the court may take judicial notice that many dried fruits are' commonly used 'as food, plus the collector's action herein, it seems to us that the importer has not established that dried huckleberries, such as were imported, are chiefly used in this country in the manufacture of coloring matter.

> Moreover, we have the presence of the "not specially provided for" clause in paragraph 1670 to consider in determining the issue here presented. Congress there provided for all the articles named with the limiting phrases "not containing alcohol" and "not specially provided for." The huckleberries in suit do not contain alcohol, but they are specially provided for in the act as "berries, edible,. * * * dried," and are, therefore, excluded from the operation of said paragraph 1670.

In the instant case, the plaintiffs introduced the testimony of two witnesses in addition to the evidence in the incorporated record. The first witness, Miss Alice Reilly, merely identified certain shipments of dried huckleberries. The second witness, Mr. Walter J. Bott, is employed by S. B. Penick & Co., one of the plaintiffs. He testified that he is director of sales for that firm in the eastern part of the United States and is sales director for various allied lines throughout the other parts of the country; that previous to his employment by S. B. Penick & Co., that is from 1929 to 1937 or 1938, he was employed by J. L. Hopkins & Co., another botanical drug firm, as purchasing agent abroad and for the promotion of sales in the United States; that since 1929 he has sold dried huckleberries in the United States and has seen such berries used in most of the industries; that he has sold them to various pharmaceutical manufacturers, wholesale druggists, soft beverage manufacturers, distillers, cordial manufacturers, bakers' supply houses, firms using them for coloring cough sirups, and also to a trade known as consultants; that the berries are an instant coloring article; that "you can put them in water, and they form an instant color solution of a purplish shade."

The witness produced a sample of the berries and it was received in evidence and marked exhibit 2 and he made a demonstration on the witness stand by putting the berries in a jar of water and shaking the mixture, showing that the water turned purple in color. This jar was marked illustrative exhibit A.

The witness testified further that he had sold 15 or 20 tons of the dried huckleberries in the course of a year and that three-quarters of his sales went to the class of trade other than the pie bakers; that when such berries are put in the pie fillings they are eaten in the pies as food and have some food value; that domestic berries give a blue color to the pie filling but when mixed with the imported berries the color is dark purple. This latter statement appears to be purely hearsay, however, as disclosed by the following questions:

Judge CLINE: Did you see the effect when these berries were added?
The WITNESS: No, I did not. I can't say I did see that.

By Mr. COLBURN:

Q. What was the purpose of using the imported dried berries?—A. We were always told they were used for coloring, substantially.

The witness testified further that the berries in question are bitter and acrid and are used in Europe for their medicinal value. On cross-examination the witness was questioned concerning his sales to the bakery trade. He testified that he had sold dried huckleberries to a chain of the bakery trade from New England down to Georgia. When asked to repeat again where he had sold them, he said:

The greater part of my promotion work has been in correspondence, but I have specifically sold them to a pie baker in Brooklyn; I have specifically sold them to the distilling trade mentioned, namely, Schenley and Hiram Walker; and we have sold them through our city sales force, of which I am the director at the present and have been, at the Hopkins organization through wholesale drug channels, and so on.

X Q. Where at?—A. In New York City and various eastern parts of the country.

X Q. All right, various eastern parts of the country. What do you mean, various eastern parts of the country?—A. Well, chiefly the metropolitan area.

X Q. It is a fact then that most of your sales have just been the metropolitan area of New York, isn't it?—A. Most of of them have.

The defendant called Mr. Jacob Greenwald who testified that he had been a dealer in bakers' supplies since 1930 and that prior to 1936 he sold dried huckleberries exclusively to bakers, but the witness did not testify whether the berries he handled were domestic or imported. The defendant called also two witnesses who were chemists employed by manufacturers of dyestuffs and colors, with 24 and 35 years of experience, respectively. They testified that they had never used dried huckleberries in their business for producing colors.

The plaintiffs claim that, inasmuch as paragraph 1670 specifies in its catch-all provision "all articles used for dyeing, coloring, staining, or tanning," it is a use provision and therefore, for classification purposes, takes precedence over paragraph 736, so that dried huckleberries used for coloring should be free of duty under paragraph 1670.

The record is not sufficient to show the chief use of all imported dried huckleberries. The plaintiffs' evidence contains the testimony of

employees from two of the importing companies, i. e., Knickerbocker Mills Co. and S. B. Penick & Co., but there is no testimony from representatives of the third plaintiff, Peek & Velsor, Inc., and there is no testimony concerning the use which other importers made of such merchandise. Witness Landes testified that all sales of Knickerbocker Mills Co. were made to two firms who produced coloring matter therefrom. He testified also that, previous to his employment with that firm, he sold the same kind of berries to distillers and cordial manufacturers for coloring purposes. Witness Bott testified that three-quarters of the berries sold by S. B. Penick & Co. went to a class of trade other than pie bakers. In describing those customers, the witness named pharmaceutical manufacturers, wholesale druggists, soft beverage manufacturers, distillers, cordial manufacturers, firms using the berries for coloring cough sirup, and consultants. There is nothing in his testimony which tends to show how the berries were used by the wholesale druggists or what proportions of the importations went to such firms. On the other hand, he admitted that one-quarter of his sales were made to makers of pie-baking materials and witness Raphall, testifying in behalf of the Government, stated that all of his sales of imported dried huckleberries were made to producers of huckleberry pies.

In the case of *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T. D. 42240, the evidence showed that high-grade tankage was used in California chiefly in the citrus fruit groves for fertilizing purposes but the record showed that in other parts of the United States it was used largely in certain seasons of the year as food for chickens and hogs. The court, in holding that the chief use of the commodity was not established, said:

The actual use of the *tankage in controversy* and the chief use of high-grade tankage *in California* does not determine the classification of the merchandise. Whether tankage of the *grade* imported was chiefly used as a fertilizer in the United States was the issue presented. What the tankage imported was actually used for and the chief use of high-grade tankage in California did not establish the chief use of high-grade tankage in the United States. Of course, if it had been proven that most of all high-grade tankage, imported and domestic, was used in California and as a fertilizer, a different case might be presented. [Italics quoted].

Under the principle announced in the foregoing decision, even if the testimony had not been conflicting as to use of the berries, the chief use was not established because the evidence of sales and use covered only the eastern part of the United States, and there is no evidence tending to show that dried huckleberries were not sold in substantial quantities in other sections of the country.

The plaintiffs claim, however, that the actual use of the berries covered by the particular importations should govern the classification, citing *United States* v. *Elgin National Watch Co.*, 5 Ct. Cust.

Appls. 336, T. D. 34532; *United States* v. *Kastor & Bros.*, 6 Ct. Cust. Appls. 52, T. D. 35323. In those cases there was a special Congressional meaning involved in the provisions upon which the importers relied.

In the *Elgin National Watch Co.* case, *supra*, the merchandise consisted of watch jewels in the form of reconstructed rubies. The case arose under the Tariff Act of 1909. There was a provision in paragraph 192 of that act for "all jewels for use in the manufacture of watches" and paragraph 449 contained a provision for reconstructed rubies. The particular articles in that case each had a hole drilled in the center presumably designed to receive the mechanism of a watch and the court held that they were dutiable under the provision for "all jewels for use in the manufacture of watches," leaving the provision for reconstructed rubies applicable for such reconstructed rubies as were not specially fit for use in watches.

In the *Kastor & Bros.* case, *supra*, the merchandise consisted of scissors which were specially provided for in paragraph 152 of the Tariff Act of 1909. The scissors in that shipment had the words "Board of Education" stenciled on one of the blades and they were imported by the Board of Education of the City of New York. The importer claimed that the articles were free of duty under the provision for instruments imported in good faith for the use or by the order of any college, academy, school, or seminary of learning and not for sale under paragraph 650. The court held that the actual use of the articles governed the classification in that case and the merchandise was returned free of duty under paragraph 650.

Congress did not enact such an exclusive use provision in paragraph 1670 as is found in the two cases cited by the plaintiff. That is indicated by the inclusion of the words "not specially provided for" which would not have been used if Congress had intended the *actual use* of the merchandise to be the test of classification. The importations consisted of dried edible berries which were specially provided for in paragraph 736 and the language of the statute does not sustain the plaintiffs' contention that the particular shipments should be classified under the free list provision in paragraph 1670 when actually used for coloring, leaving other berries of the same kind, but used for different purposes, dutiable under paragraph 736.

We hold that, inasmuch as the record fails to show that the chief use of all dried huckleberries of the characteristics of those herein involved is for producing colors, the claim under paragraph 1670 must be and hereby is overruled. The claims under paragraphs 1669 and 1722 are overruled also, as there is nothing in the record to indicate that they are applicable. Judgment will be entered in favor of the defendant.